

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| J&J SPORTS PRODUCTIONS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. L-08-42 |
| | § | |
| WALTER VALDEZ, individually and d/b/a | § | |
| HUSTLER'S a/k/a HUSTLER'S | § | |
| BILLIARDS & SPORTS BAR, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Pending is Plaintiff's Motion for Summary Judgment (Dkt. No. 10), filed September 23, 2008. Defendant Walter Valdez has not filed a response.

### Background

Plaintiff J&J Sports Productions, Inc. ("J&J") is a California corporation. Defendant Walter Valdez is alleged to be a general partner, owner or manager of, or does business as, Hustler's Billiards & Sport's Bar ("Hustler's") in Laredo, Texas.

J&J entered into a closed-circuit television license agreement ("the License Agreement") in early September 2005 to exhibit the September 17, 2005 championship boxing match between Marco Antonio Barrera and Robbie Peden from the MGM Grand in Las Vegas, Nevada, including an undercard bout (collectively "the Event"), at locations throughout the United States and Puerto Rico. The Event was to be exhibited in commercial establishments only if the closed-circuit broadcast was contractually authorized by J&J.

Pursuant to the License Agreement, J&J marketed and distributed the closed-circuit rights to commercial establishments in exchange for a sublicense fee. The interstate satellite transmission of the Event was electronically coded or scrambled and was not intended for receipt by the general public. Commercial establishments were provided electronic decoding equipment and/or satellite coordinates necessary to receive the signal to broadcast the Event clearly.

The record reflects that Hustler's did not contract with J&J to obtain the rights to broadcast the Event, and on September 17, 2005, exhibited an unauthorized telecast of the Event at the Hustler's premises. On the night of the Event, an auditor hired by J&J, Martin H. Vacca, observed the Event being telecast to approximately thirty patrons at the bar.

J&J instituted this action on September 19, 2007, asserting that Valdez, through the commercial establishment, Hustler's, willfully and wrongfully intercepted and exhibited the Event, without authorization and without paying J&J a sublicense fee, in violation of the Communications Act of 1934 ("the Act"). On April 1, 2008, the District Court for the Western District of Texas transferred this case to the Southern District of Texas. On September 23, 2008, J&J filed the pending motion.

## Discussion

As an amendment and supplement to the Act, "Congress enacted the Cable Communications Policy Act of 1984 to address 'a problem which is increasingly plaguing the cable industry-the theft of cable service.'" *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.,* 253 F.3d 900, 911 (6th Cir. 2001), *cert. denied,* 122 S.Ct. 1127 (2002). "The legislative history associated with section 553 and the amendments to section 605 reveals that one of

Congress's principal objectives was to discourage theft of cable services." *Prostar v. Massachi,* 239 F.3d 669, 673 (5th Cir. 2001).

Both 47 U.S.C. §§ 553 and 605 provide civil remedies for the unauthorized interception, reception, and broadcast of satellite cable communications. *See* 47 U.S.C. §§ 553(a)(1), 605(a); *Prostar,* 239 F.3d at 673-74. The statutes provide any person aggrieved by a violation of §§ 553 or 605 with a private right of action. *See* §§ 553(c)(1), 605(e)(3)(A).

A. *Liability*

To establish liability under these sections, J&J must show that the Event was shown at Hustler's and that such exhibition was not authorized by J&J. *See Kingvision Pay-Per-View, Ltd. v. Lake Alice Bar,* 168 F.3d 347, 349 (9th Cir. 1999). J&J relies on two uncontroverted affidavits. Vacca's affidavit states that, on September 17, 2005, he observed a broadcast of the Event on one big screen television at Hustler's in the presence of approximately thirty patrons. J&J also attaches the affidavit of Thomas P. Riley, an attorney for J&J. Riley's affidavit establishes that J&J had the exclusive, proprietary right to exhibit and sublicense exhibition of the Event to closed-circuit locations in the United States, and that Hustler's did not obtain authorization from J&J to display the Event. This uncontroverted summary judgment evidence establishes that Hustler's violated §§ 553 and 605.

J&J's summary judgment evidence also establishes that Valdez was a general partner of Hustler's the night the Event was broadcast, and is liable for Hustler's obligations and actions. J&J attaches the affidavit of Amy Harrison, Director of the Licensing Division for the Texas Alcoholic Beverage Commission. The affidavit establishes that a Mixed Beverage Permit, MB-569383, "was issued to Rogelio Mendoza and Walter

Valdez, doing business as Hustler's . . . on the 29th day of November, 2004, and was continuously renewed." (Dkt. No. 11, Ex. C.) The affidavit continues, "said permit was canceled for cause on the 23rd day of May, 2007." (*Id.*) This establishes circumstantially that Valdez, by applying for and receiving a mixed beverage permit with Mendoza, was a partner with Mendoza and doing business as Hustler's on the night the Event was illegally broadcasted.[1]

B. *Damages*

Although J&J alleges violations of both sections, it elects to seek damages exclusively under § 605. The Court may award "not less than $1000 or more than $10,000, as the court considers just," for each violation. § 605(e)(3)(C)(i)(II). If the Court determines that a violation is "committed willfully and for purposes of commercial advantage or private financial gain, the court, in its discretion, may increase the award of damages . . . by an amount of not more than $100,000." § 605(e)(3)(C)(ii).

Courts have developed two approaches for determining statutory damages under § 605. One approach is to base the award of damages on the number of patrons in the establishment at the time of the violation. *See, e.g., Time Warner Cable of New York City v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) (awarding $50 per patron). Another method is to award a flat sum for damages. *See, e.g., Kingvision Pay-Per-View, Ltd. v. Jasper Grocery*, 152 F. Supp. 2d 438, 442 (S.D.N.Y. 2001) (awarding $5,000).

J&J asserts that the sublicense fee is normally twenty times the maximum fire code occupancy of the commercial establishment purchasing the Event or as negotiated by the parties. (Dkt. No. 11, Ex. A.) However, there is also typically a minimum sublicense fee of

---

[1] Rogelio Mendoza was originally named a defendant but was dismissed without prejudice on August 25, 2008 for Plaintiff's failure to effect service. (*See* Dkt. No. 7.)

$1,000. (*Id.*) Although J&J has furnished the Court no information regarding the total capacity of Hustler's, J&J presumably lost the minimum of $1,000 as a result of J&J's misappropriation of the broadcast. The deterrence of future violations, however, is one of the objectives of the Act. *See Prostar*, 239 F.3d at 673. There would be no incentive to cease the violation if the penalty were merely the amount that should have been paid to J&J. Thus, to deter Hustler's from future violations of the statute, the Court concludes that statutory damages of $1,500 are just.

Although J&J has offered no direct evidence that Hustler's acted willfully, it has submitted evidence that Hustler's charged a $5 admission to the establishment on the evening of the broadcast. (Dkt. No. 11, Ex. A-2.) Based on the limited methods of intercepting closed-circuit broadcasting of pay-per-view events and the very low probability that a commercial establishment could intercept such a broadcast by chance, it is safe to conclude that Hustler's conduct in this case was willful and for the purposes of direct or indirect commercial advantage or private financial gain. *See, e.g., Kingvision Pay-Per-View, Ltd. v. Admiral's Anchor, Inc. No. 2*, 172 F. Supp. 2d 810, 812 (S.D. W.Va. 2001); *Googies Luncheonette, Inc.*, 77 F. Supp. 2d at 490.

Mitigating against J&J's request for maximum damages, the summary judgment record shows that this case involved a single unauthorized transmission, viewed by only thirty people. There is no evidence that Hustler's openly advertised the Event to attract a larger audience, nor that Hustler's repeatedly committed such violations. Therefore, the Court finds that the damages award of $1,500 should be increased to $2,500.

C. *Attorney's Fees*

J&J is entitled to recover its reasonable attorney's fees and costs of court incurred in pursuing this action. § 605(e)(3)(B)(iii). J&J has established by the affidavit of its attorney Andrew R. Korn attorney's fees in the amount of $1,500. Korn's fees are reasonable and were necessarily incurred in the prosecution of this case. Therefore, J&J is awarded attorney's fees in the amount of $1,500 and costs of court as permitted by statute.

## Conclusion

There exist no disputed issues of material fact, and J&J is entitled to judgment as a matter of law. Accordingly, J&J's Motion for Summary Judgment (Dkt. No. 10) is GRANTED.

DONE at Laredo, Texas, this 4th day of December, 2008.

George P. Kazen
United States District Judge